UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

ALBERT D. INGRAM :
: CASE NO. 1:08-CV-627
       Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 24.]
MANAGEMENT TRAINING CORP., *et al.* :
:
       Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Donna Teare, Vicki Owen, and Suzette Bur (collectively, the "Defendants") move for summary judgment in this action. [Doc. 24.] Plaintiff Albert D. Ingram has not responded. For the following reasons, the Court **GRANTS** the Defendants' motion.

**I. Background**

Plaintiff Albert D. Ingram, a 39-year-old African-American male who was previously incarcerated at the Lake Erie Correctional Institution ("Lake Erie"), sued Defendants Donna Teare, Vicki Owen, and Suzette Bur[1] under 42 U.S.C. § 1983, claiming that these individuals violated his rights under the Eighth and Fourteenth Amendments because he developed blisters on his feet due to their improper medical care while he was an inmate at Lake Erie. [Doc. 1.] Ingram also appeared to articulate a claim of retaliation against Defendants Teare and Owen. [*Id.*]

According to Plaintiff Ingram, Defendant Teare is a registered nurse and a healthcare

---

[1] Defendant Ingram also sued Management Training Corp. and Terry Collins, but the Court dismissed both of these parties from this action pursuant to 28 U.S.C. §1915(e) on June 27, 2008. [Doc. 3.]

-1-

Case No. 1:08-CV-627
Gwin, J.

administrator for First Correctional Medical ("First Correctional"), which provides health care services to the Lake Erie inmates. [*Id.* at 3.] Defendant Dr. Vicki Owen is a physician employed by First Correctional. [*Id.*] Defendant Suzette Bur is a registered nurse employed by First Correctional who works under the supervision of Defendant Teare. [*Id.*]

Prior to his incarceration, Plaintiff Ingram was shot in the left leg and required surgery to address the gunshot wound. [*Id.* at 4.] As a result of this surgery, the Plaintiff's left leg is shorter than his right leg and he wears an orthopedic shoe with a lift to compensate for the difference in the length of his legs. [*Id.*]

In his Complaint, the Plaintiff stated that on November 28, 2006, he met with Defendant Teare after arriving to Lake Erie from Lorain Correctional Institution ("Lorain") and informed Teare that his feet were extremely sore from wearing his prison-issue boots. [*Id.*] Teare referred Ingram to another nurse, who told him to call and to make an appointment for a subsequent examination. [*Id.*]

On December 8, 2006, a nurse examined Ingram and referred him to be seen by Dr. Goble. [*Id.*] On January 7, 2007, Dr. Goble recommended that Ingram be seen by Dr. Rung, who was a podiatrist. [*Id.*] On or about February 7, 2007, Ingram met with Dr. Rung and she told him that she would have to speak with Defendant Teare to determine whether there were funds available to order orthopedic shoes for the Plaintiff. [*Id.*] On April 6, 2007, Ingram again met with Dr. Rung, but she told him that she had not yet heard from Defendant Teare regarding whether there were funds available to order the necessary shoes for the Plaintiff. [*Id.*]

On or about April 26, 2007, a nurse allowed the Plaintiff to pick out a pair of shoes from a medical shoe catalogue, but she also indicated that Teare may not approve this purchase. [*Id.* at 5.]

Case No. 1:08-CV-627
Gwin, J.

On or about May 14, 2007, Dr. Rung gave the Plaintiff a pair of gym shoes that were too narrow, causing pain and blisters. [*Id.*] On May 28, 2007, the Plaintiff complained to a nurse and later to Defendant Teare regarding these shoes, but he was told by both women that he needed to give the shoes time to stretch. [*Id.*]

On or about May 30, 2007, Plaintiff Ingram complained to Defendant Dr. Owen regarding his feet, but Dr. Owen did not examine the Plaintiff's feet and told him to continue to wear the shoes. [*Id.*] On June 10, 2007, Dr. Owen told Ingram to buy emery boards from the commissary and to file his feet, despite the Plaintiff's complaints that he had blood-filled blisters on his feet. [*Id.*] Dr. Owen did not examine the Plaintiff's feet at this point. [*Id.*]

On June 14, 2007, Dr. Rung told the Plaintiff that no other shoes could be ordered for him because Defendant Teare had stated that they would be too expensive. [*Id.*] On June 21, 2007, the Plaintiff told Defendant Bur about his worsening foot pain and his blisters and she told him to file his feet with emery boards. [*Id.* at 6.] On June 29, 2007, the Plaintiff complained to another nurse and she told him that, although she kept putting Ingram's chart in for review, it was hard to get Dr. Owen to do anything. [*Id.*]

On or about August 9, 2007, the Plaintiff approached a visiting state medical auditor from Columbus, Ohio and told him about the difficulties he was having with the Lake Erie medical staff. The auditor immediately ordered Defendant Teare to retrieve Ingram's medical chart. [*Id.*] The next day, a nurse had the Plaintiff order a pair of boots from a medical shoe catalog. [*Id.*]

Plaintiff Ingram filed an informal complaint on November 22, 2007 concerning his worsening pain, soreness, and blisters on both feet. [*Id.*] Nothing was done about the informal complaint. [*Id.*] Additionally, on both November 15, 2007 and November 28, 2007, Defendant Dr. Owen told Ingram

Case No. 1:08-CV-627
Gwin, J.

that he could not see the podiatrist. [*Id.*] The Plaintiff filed an informal complaint against Dr. Owen with Deputy Warden Joyce on November 28, 2007. [*Id.*] Ingram stated that the medical staff provided false information to Warden Joyce, indicating that the Plaintiff did not have any blisters on his feet. [*Id.* at 7.]

On December 3, 2007, Defendant Teare ordered the Plaintiff to come into her office, closed the door, and ordered him to sit down and to take off his boots and socks. [*Id.*] Teare then used a pair of toenail clippers to cut his skin-covered blisters until they started to bleed. [*Id.*] At this point, Teare stated, "looks like I better stop before you bleed all over my floor; that's a joke, Ingram." [*Id.*] Teare then dismissed the Plaintiff without bandaging the wounds, causing the Plaintiff to use his own tissues to stop the bleeding. [*Id.*]

Plaintiff Ingram filed a grievance with the institutional inspector on December 11, 2007. [*Id.*] He then filed an appeal to the chief inspector of the Ohio Department of Rehabilitation and Correction on December 20, 2007, requesting intervention due to prolonged medical neglect. [*Id.*] The Plaintiff received his orthopedic boots on December 12, 2007, but these boots still caused pain and blistering. [*Id.*] Ingram complained and requested to see the podiatrist starting from December 19, 2007, but, as of February 12, 2008, his requests were ignored. [*Id.*]

In response to Plaintiff Ingram's Complaint, the Defendants move for summary judgment, arguing that there is "no genuine issue of material fact relevant to [the] Plaintiff's claims of medical indifference. Specifically, [the] Plaintiff cannot demonstrate [that] the[] Defendants were 'deliberately indifferent' to a 'serious medical need' of [the] Plaintiff 'as to unnecessarily and wantonly inflict pain." [Doc. 24.] The Defendants also state that the Plaintiff has not "alleged any facts that would support his claim that Defendants Tear and Owen retaliated against the grievances he filed against

-4-

Case No. 1:08-CV-627
Gwin, J.

them." [*Id.*] Plaintiff Ingram has not responded. For the following reasons, the Court **GRANTS** the Defendants' motion.

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville,* 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. FED. R. CIV. P. 56(e).

-5-

Case No. 1:08-CV-627
Gwin, J.

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

In their motion for summary judgment, the Defendants argue that they are entitled to judgment as a matter of law as to Plaintiff Ingram's § 1983 claim that the Defendants violated his Eighth and Fourteenth Amendment rights, as well as to Plaintiff Ingram's retaliation claim. [Doc. 24.] The Court considers all of the Defendants' arguments below.

*A. Plaintiff Ingram's Eighth Amendment Claim*

Plaintiff Ingram does not have a cognizable Eighth Amendment claim since he cannot demonstrate that the Defendants acted with deliberate indifference to his serious medical needs as to unnecessarily and wantonly inflict pain. As a result, the Court grants summary judgment in favor of the Defendants with respect to this claim.

The government is obligated "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Because inmates must rely on prison

Case No. 1:08-CV-627
Gwin, J.

authorities to address their medical needs, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[]' proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). This notion holds true

> whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Id.* at 104-05.

A "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," *id.* at 105-06, however. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

Courts have held that "deliberate indifference" has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the existence of a "sufficiently serious" medical need. *Id.* "Medical need is objectively [or sufficiently] serious if it . . . 'has been diagnosed by a physician as mandating treatment *or* . . . [if it] . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted). A medical need is not objectively or sufficiently serious when immediate medical attention is not required. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

The subjective component requires an inmate to demonstrate that prison officials have "a sufficiently culpable state of mind in denying medical care." *Id.* at 895. This component "should be

-7-

Case No. 1:08-CV-627
Gwin, J.

determined in light of the prison authorities' current attitudes and conduct." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Under the subjective standard, deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th Cir. 2001). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs[] is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir.1994).

In this case, Plaintiff Ingram cannot demonstrate that the Defendants acted with deliberate indifference to his serious medical needs as to unnecessarily and wantonly inflict pain. First, the blisters on his feet did not present a sufficiently serious medical need because they did not require immediate medical attention. Indeed, a court in the Sixth Circuit has held that an inmate could not make out an Eighth Amendment claim based on the fact that ill-fitting, state-issued shoes caused corns and calluses to continually form on the inmate's feet because the inmate's "medical needs were clearly not serious enough to require immediate medical attention and there [was] no indication that [he] was deprived of the 'minimal civilized measure of life's necessities.'" *Jones v. Hood*, No. 06-11925-BC, 2006 WL 1984274, at *6 (E.D. Mich. July 13, 2006). Plaintiff Ingram also does not demonstrate that he has suffered any kind of permanent injury as a result of the blisters or that he has needed to undergo any procedures to correct this issue.

Further, Plaintiff Ingram cannot satisfy the subjective component of the "deliberate indifference" test because he does not demonstrate that the Defendants were aware that there was

-8-

Case No. 1:08-CV-627
Gwin, J.

a substantial risk that the blisters would cause the Plaintiff serious harm and that they disregarded this risk. In essence, Ingram does not show that the Defendants acted recklessly with respect to addressing Ingram's medical complaints.

Because Plaintiff Ingram cannot demonstrate that the Defendants acted with deliberate indifference to his serious medical needs as to unnecessarily and wantonly inflict pain, the Court grants summary judgment in favor of the Defendants with respect to Ingram's Eighth Amendment Claim.

*B. Plaintiff Ingram's Retaliation Claim*

Plaintiff Ingram cannot make out a retaliation claim against Defendants Teare and Owen. As a result, the Court grants summary judgment in favor of these Defendants on this claim.

Under Sixth Circuit case law, a "retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

In this case, Plaintiff Ingram cursorily suggested in his Complaint that Defendants Teare and Owen retaliated against him because he filed grievances concerning their medical treatment of him (or lack thereof). Ingram did not present any facts supporting any of the three elements of a *prima facie* claim of retaliation in his Complaint, however. Accordingly, the Court grants summary judgment in favor of Defendants Teare and Owen on this claim.

### III. Conclusion

Case No. 1:08-CV-627
Gwin, J.

>For the above reasons, the Court **GRANTS** the Defendants' motion for summary judgment.

>IT IS SO ORDERED.

Dated: February 20, 2009                  s/ *James S. Gwin*
                                                              JAMES S. GWIN
                                                              UNITED STATES DISTRICT JUDGE